PHILLIP A. TALBERT
United States Attorney
KATHERINE T. LYDON
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
KRISHNA S. DIGHE
Senior Counsel
STEPHEN J. FOSTER
Trial Attorney
Environmental Crimes Section, U.S. Dept. of Justice
150 M Street NE
Washington, DC 20002
Telephone: (202) 305-0321

Attorneys for Plaintiff
United States of America

FILED
Jul 17, 2023
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>SINISTER MFG. COMPANY, INC.,<br>fka SINISTER MFG. COMPANY, LLC, and dba SINISTER DIESEL and MKM CUSTOMS,<br>Defendant. | CASE NO. 2:23-cr-0168 TLN<br><br>18 U.S.C. § 371 – Conspiracy; 42 U.S.C. § 7413(c)(2)(C) – Tampering with a monitoring device or method required under the Clean Air Act |

# I N F O R M A T I O N

COUNT ONE: [18 U.S.C. § 371 – Conspiracy to Violate the Clean Air Act and to Defraud the United States]

The United States Attorney charges:

SINISTER MFG. COMPANY, INC., formerly known as SINISTER MFG. COMPANY, LLC, and doing business as SINISTER DIESEL and/or MKM CUSTOMS ("SINISTER"),

defendant herein, as follows:

## I. BACKGROUND

At all times relevant to the Information:

Legal Background

1. The Clean Air Act ("CAA") was enacted by Congress "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare . . . ." 42 U.S.C. § 7401(b)(1).

2. The CAA made it a crime for any person to knowingly falsify, tamper with, or render inaccurate any monitoring device or method required to be maintained or followed under the CAA. 42 U.S.C. § 7413(c)(2)(C).

3. The CAA required a motor vehicle to have an On-Board Diagnostic System ("OBD"), which was a monitoring device or method. *See* 42 U.S.C. § 7521(m)(1); 40 C.F.R. §§ 86.010-18 and 86.1806-05.

Defendant

4. SINISTER was incorporated in California and located in Roseville, California. SINISTER did business throughout the United States, including in the Eastern District of California.

5. From SINISTER's incorporation on March 3, 2010, until April 30, 2020, SINISTER manufactured and sold parts intended to be installed on a vehicle to enable removal or disabling of the vehicle's emissions control system. SINISTER sometimes sold these "hard parts" as part of "delete kits," and sometimes sold them in bundles with "tuners" and/or "tunes" manufactured by other companies. "Tunes" were, generally, alterations to the electronic code that motor vehicles use to control, among other things, fuel delivery, power parameters, and emissions. Delete tunes were software programs that allowed a "deleted" diesel truck—a motor vehicle that has had its emissions controls removed or disabled—to run seemingly normally, even though its emissions controls were removed or disabled.

Emissions Controls and "Deletion"

6. "Deleting" a vehicle means to remove or disable a motor vehicle's emissions control equipment that the vehicle's manufacturer originally installed to meet emissions limits required under the CAA. For diesel vehicles, this equipment often includes a diesel particulate filter ("DPF"), a selective catalytic reduction ("SCR") system, an exhaust gas recirculation ("EGR") system, and a diesel oxidation catalyst ("DOC"). The DPF, SCR and DOC are housed in a section of the vehicle's exhaust system. One method of deleting a vehicle involves removing this section of the original exhaust pipe assembly and replacing it with a "straight pipe," that is, a hollow pipe without emissions controls. The EGR can be disabled physically or electronically. Drivers seek to remove emissions controls for reasons including increasing horsepower/performance and avoiding maintenance costs.

7. However, when emissions components are disabled, certain safeguards will be triggered. The OBD, which monitors the operation of the emissions control system, will detect the malfunction and if not corrected, will cause a "malfunction indicator light" ("MIL") to appear on the dashboard. The OBD will also cause a "diagnostic trouble code" ("DTC") to be recorded in the vehicle's computer memory, which allows for the detection and diagnosis of the malfunction. Disabling the MIL and the DTC serves to conceal the malfunction. The OBD may also cause the vehicle to go into "limp mode," which reduces the maximum speed of the vehicle until the malfunction is corrected.

8. Three broad categories of products are used to disable a diesel vehicle's emissions control system:

a) Hard parts, often sold as part of "delete kits." A delete kit would include all hard parts needed to delete a vehicle. The simplest example of a delete hard part is a "straight pipe" (a replacement for the original exhaust pipe with all of the emissions controls removed).

b) Software known as "delete tunes." Delete tunes tamper with the OBD's monitoring function by tricking the OBD to prevent it from detecting the removal of emissions controls and thus enabling the vehicle to continue to operate as though its emissions controls remained installed.

c) A "tuner" or tuning platform to run or install the tunes, which can be a physical box/device or a cloud-based system. A tuner or tuning platform interfaces with the vehicle's computer and OBD that control and monitor various vehicle functions.

SINISTER sold products from each of these categories.

9. Deleting a diesel truck causes its emissions to increase dramatically. Diesel emissions include multiple hazardous compounds that deleteriously impact human health and the environment.

## II. THE CONSPIRACY

10. Beginning on a date no later than on or about March 3, 2010, and continuing through on or about April 30, 2020, in the State and Eastern District of California and elsewhere, SINISTER knowingly and intentionally conspired with persons known and unknown to the United States Attorney, including certain SINISTER employees, customers, and others, to falsify, tamper with, render inaccurate, and fail to install a monitoring device and method required under the Clean Air Act, in violation of Title 42 U.S.C. § 7413(c)(2)(C), and to defraud the United States Environmental Protection Agency.

## III. MANNER AND MEANS

During all times relevant to the conspiracy, the manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

11. From at least on or about SINISTER's incorporation on March 3, 2010, through on or about April 30, 2020, SINISTER agreed with other persons and at least one company, within and outside SINISTER, to violate the CAA in the Eastern District of California and elsewhere.

12. From SINISTER's incorporation until April 30, 2020, SINISTER manufactured and sold parts to enable removal or disabling of the vehicle's emissions control system. SINISTER often sold these hard parts as part of delete kits.

13. SINISTER entered into agreements and arrangements with companies in the aftermarket delete device industry who manufactured tunes and tuners or tuning platforms to sell those companies' products. SINISTER then sold those other companies' tunes and tuners or tuning platforms directly to customers or shops, sometimes bundled with hard parts.

14. For example, SINISTER entered into agreements with COMPANY A, a company that produced delete tunes, whereby SINISTER sold COMPANY A's tunes to SINSTER customers. As a result, SINISTER promoted and sold its own products (hard parts) to customers bundled with COMPANY A tunes, along with tuners or tuning platforms produced by other companies. Typically,

SINISTER would bill the customer for the entire sale, including the delete tunes and tuner, and ship the hard parts directly to the customer. COMPANY A would send the tunes directly to the customer, either by loading them on the tuner or loading them to a tuning platform. COMPANY A would then bill SINISTER for those products.

15. SINISTER also formed agreements with end users to whom it sold SINISTER hard parts, as well as delete tunes and tuners/tuning platforms produced by other companies. SINISTER marketed delete products directly to customers. During telephone conversations, SINISTER salespeople guided customers through what delete products would be required to delete the customers' diesel pickup trucks.

16. SINISTER was aware that the hard parts and delete kits SINISTER manufactured and sold were used in connection with deleting emissions control equipment and tampering with the monitoring function of OBDs.

17. At times, SINISTER characterized its delete products as for racing and/or included disclaimers in its sales and marketing materials indicating that its products should be used only in off-road settings; however, SINISTER knew the bulk of its end user customers were diesel truck drivers who used the delete products they purchased from SINISTER on public roads, not racetracks.

18. SINISTER counseled end users on how to evade state emissions tests for motor vehicles, advising customers to remove SINISTER's delete products in order to pass emissions tests and then reinstall them.

19. SINISTER also agreed with certain employees, other individuals, and at least one company with whom it did business, to defraud the United States by interfering with the EPA's lawful functions of limiting pollutants emitted into the air and ensuring compliance with the Clean Air Act. SINISTER agreed to do so by manufacturing and selling defeat devices, attempting to thwart EPA's detection through phone-only sales and removing violative products from its website, counseling customers on how to cheat emissions tests, and engaging in various artifices including pretending that its defeat devices were for off-road or race use only.

## IV. OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, SINISTER, together with others known and unknown to the U.S. Attorney, committed and willfully caused others to commit the

following overt acts, among others, in the State and Eastern District of California and elsewhere:

20. From in or about March 2010 through in or about April 2020, SINISTER sold and caused to be sold tens of thousands of defeat devices, including hard parts, tuners/tuning platforms, and delete tunes which tampered with the monitoring function of OBDs.

21. On or about April 16, 2015, during a sales call, a SINISTER employee guided a customer through everything the customer would need to delete the DPF and EGR on his truck and tune his truck. The SINISTER employee explained that certain of the required products were not available for purchase on SINISTER's website but SINISTER would sell them to him over the phone.

22. On or about February 26, 2019, in response to a customer's request for an instructional video on how to install an EGR delete kit, SINISTER advised the customer there was a link to the instructions on SINISTER's website, sent the customer the link, and offered to provide additional support by phone.

23. On or about August 26, 2019, SINISTER sold a customer located in Texas an EGR delete kit.

All in violation of Title 18, United States Code, Section 371.

COUNT TWO: [42 U.S.C. § 7413(c)(2)(C) – Tampering with a monitoring device or method required under the Clean Air Act]

The United States Attorney further charges T H A T:

SINISTER MFG. COMPANY, INC., formerly known as SINISTER MFG. COMPANY, LLC, and doing business as SINISTER DIESEL and/or MKM CUSTOMS,

defendant herein, in or about June 2019, in the State and Eastern District of California and elsewhere, knowingly tampered with, falsified, and rendered inaccurate a monitoring device and method required to be maintained under the Clean Air Act by selling an EGR delete kit manufactured by SINISTER, delete tunes manufactured by COMPANY A, and a tuner/tuning platform manufactured by another company to INDIVIDUAL A, for installation on the motor vehicle owned by INDIVIDUAL A and located in Wisconsin.

All in violation of Title 42, United States Code, Section 7413(c)(2)(C) and Title 18, United

States Code, Section 2(a).

Dated: July 17, 2023

PHILLIP A. TALBERT
United States Attorney

By: */s/ Katherine T. Lydon*
KATHERINE T. LYDON
Assistant United States Attorney

Dated: July 17, 2023

TODD KIM
Assistant Attorney General

By: */s/ Krishna S. Dighe*
KRISHNA S. DIGHE
Senior Counsel
Environmental Crimes Section

STEPHEN J. FOSTER
Trial Attorney
Environmental Crimes Section

**United States v. SINISTER MFG. COMPANY, INC.**
**Penalties for Information**

**COUNT 1:**

VIOLATION: 18 U.S.C. § 371 – Conspiracy

PENALTIES: Fine of up to $500,000 or twice the gross gain or loss from the offense; and Organizational probation of up to 5 years.

SPECIAL ASSESSMENT: $400 (mandatory on each count)

**COUNT 2:**

VIOLATION: 42 U.S.C. § 7413(c)(2)(C) – Tampering with a monitoring device or method required by the Clean Air Act

PENALTIES: Fine of up to $500,000 or twice the gross gain or loss from the offense; and Organizational probation of up to 5 years.

SPECIAL ASSESSMENT: $400 (mandatory on each count)